Glen J. Biondi, Esq. (SBN 207744)
THE BIONDI LAW FIRM
31610 Railroad Canyon Road, Ste. 2
Canyon Lake, CA 92587
Tel: (951) 246.6145
Fax: (951) 344-8281
glen@biondilawfirm.com

Attorneys for Plaintiff,
JOHN P. ATANASIO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. ATANASIO, an individual<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware company, and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES<br><br>1. TRADEMARK INFRINGEMENT (15 U.S.C. §1114(1)(A))<br>2. COMMON LAW TRADEMARK INFRINGEMENT;<br>3. FALSE ENDORSEMENT UNDER THE LANHAM ACT (15 U.S.C. §1125(A))<br>4. CALIFORNIA UNFAIR BUSINESS PRACTICE<br><br>*Unlimited Civil Case*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, John Atanasio, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a). This is a civil action for trademark infringement and unfair competition arising under the Lanham Act of 1946 as amended (codified at 15 U.S.C. §§1051, et seq. and §1114(1).

1.
COMPLAINT

2. This Court has jurisdiction over Plaintiff's claims under the laws of the State of California based upon principles of supplemental jurisdiction and in accordance with 28 U.S.C §1367(a), in that the state law claims under California are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court has *in personam* jurisdiction over Defendant, as Defendant is engaged in trademark infringement and unfair competition directed at and/or which caused damage to persons and entities residing in, located in, or doing business in the United States, including California, and is itself conducting business in this district.

4. Venue is proper in this judicial district pursuant to 15 U.S.C §1121, and 28 U.S.C. §§1338(a) and (b) and 1391(b) for the following reasons: (i) Defendant "resides" in this judicial district for venue purposes under 28 U.S.C. §1391(c)(2) and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

5. Plaintiff, John P. Atanasio ("Plaintiff" or "Atanasio") is an individual and resident of Las Vegas, Nevada.

6. Plaintiff is informed and believes, and based thereon alleges, that Defendant, Walmart is a corporation duly organized and existing under the laws of Delaware having a principal place of business and headquarters in California located at 850 Cherry Street, San Bruno, California.

**GENERAL ALLEGATIONS**

7. Atanasio formed Tattoo Tequila, Inc., ("Tattoo Tequila") as a Nevada corporation in 2011 whose business is distilling and distributing a premium blend of tequila. Atanasio is the current president and chairman of the board of Tattoo Tequila.

8. Tattoo Tequila is an award winning artisan crafted, small batch organic tequila brand that is distilled from organic blue agave in Jalisco, Mexico. Tattoo Tequila distills Blanco, Reposado and Anejo blends of tequila.

9. Atanasio and used the trademark described herein to identify his goods and services in or about 2011.

10. Atanasio obtained trademark certification for Tattoo Tequila's brand symbol on November 17, 2015 through the United States Patent and Trademark office, Register No. 4,856,198 ("Trademark"), which is and continues to be in full force and effect. A true and correct copy of Atanasio's Trademark is attached hereto as **Exhibit "A"**. The mark consists of a black skull against a white background with horizontally stretched mask like eyes with white cavity; a triangular nose cavity and the symbolic monogram of "TT" on the skull's forehead. This mark is featured on all bottles of Tattoo Tequila's Blanco, Reposado and Anejo blends of tequila, as well as all promotional material, including a custom built Harley-Davidson motorcycle built by Count's Kustom in Las Vegas Nevada for Tattoo Tequila's $50,000 promotional Margarita. (a copy of Tattoo Tequila's custom Harley Davidson promotional banner is attached hereto as **Exhibit "B"**).

11. Atanasio has also received a Dictamen from the Mexican government which is comparable to the trademark registration in the United States.

12. Tattoo Tequila is a luxury brand, highly rated and critically acclaimed blend of tequila. Atanasio has developed marketing and philanthropic sponsorship partners with such companies as Harley-Davison, Apple, Inc., Mont Blanc & St. Jude Children's Research Hospital where the Trademark has been prominently featured.

13. The Trademark has also been on display via numerous sponsored events such as the National Football League's Los Angeles Rams – LA Coliseum, Mont Blanc Caesar's Forum Shops in Las Vegas, Nevada, the Sturgis Motorcycle Rally & Concert Series in Sturgis, South Dakota, the Big Island Chocolate Festival,

Arizona Bike Week, the San Diego Spirits Festival, Treasure Island Pirate SUP Race, the Frozen Dead Guy Days and Tequila & Taco Festivals and has been featured in Inked Magazine (Attached hereto as **Exhibit "C"** are copies of a number of exemplars of the Trademark as currently used in commerce).

14. In addition, Atanasio's Trademark is promoted on clothing garments such as ball caps and t-shirts as well as other promotional materials and goods associated with the spirits industry including bottle openers, shakers, shot glasses, margarita salters. (Attached hereto as **Exhibit "D"** are examples of the Trademark as currently used on clothing and promotional materials

**Defendants' Infringement of Tattoo Tequila's Trademark**

15. In or about September, 2019, Atanasio first noticed the Tattoo Tequila bottles were being prominently featured on Walmart's Facebook social media holiday party advertisement page. (Attached hereto as **Exhibit "E"** is an add from Walmart's Facebook page).

16. According to Walmart's Facebook page, Walmart.com has more than 32 million followers. **(Exhibit "F")** Depending on Walmart's advertising Ad Spend, however, Walmart.com could reach far more than 32 million Facebook followers, which does not include any follower engagements, sharing and reposting which could lead to even larger exposure among Walmart's Facebook followers.

17. As part of Walmart's unauthorized marketing campaign, Walmart.com prominently featured a bottle of Tattoo Tequila as part of its "Halloween Indoor Décor Section" masthead ad graphic from September 25, 2019 to at least October 30, 2019. A mouse rollover pop up message appeared when rolling over the Tattoo Tequila bottle that stated the following:

> "Spell Binding Décor. Throw a Halloween party that is wicked fun with a blend of dark décor and glam accents. Just add creep treats and a signature drink for an elevated good time." (a copy of the mouse rollover pop-up message is attached hereto as **Exhibit "G"**).

18. Defendants also features Tattoo Tequila in the Walmart.com website masthead advertisement and promotes a "signature drink", however, Walmart does not carry Tattoo Tequila. According, Defendants are using the Tattoo Tequila image as a marketing hook and then drive sales to other spirit brands since Tattoo Tequila is not available through Walmart. (Attached hereto as **Exhibit "H"** are examples of Walmart's unauthorized use of Tattoo Tequila bottle of tequila featuring the trademarked brand image).

19. Further, a Google search of Walmart Halloween interior decorations also features the unauthorized use of the Tattoo Tequila brand image for its indoor Halloween décor through Walmart.com. (Attached hereto as **Exhibit "I"** is the screenshot of the result from the Google search for Walmart Halloween interior decorations displaying the advertisement as described above. See middle row, 3rd image from the right).

20. When Atanasio discovered the infringement on or around September 20, 2019, he immediately contacted Walmart's corporate headquarters by telephone several times during the week of September 23, 2019 to demand the unauthorized use be stopped and the ads displaying Tattoo Tequila be taken down.

21. Atanasio requested to speak to several people including Doug McMillion, who Atanasio is informed and believes is the CEO, Corporate Legal Department with no success. He requested to speak with the head of Adult Beverage and/or Spirits and the person who oversees the Walmart.com website and was denied access on each repetitive call.

22. Atanasio also called and asked to be put through to the Walmart.com business unit and was able to speak with a woman that claimed to be the web manager. Atanasio explained the situation and unauthorized use and infringement of his trademark and demand that the ad displaying the Tattoo Tequila images be taken down. Atanasio requested she go online so that he could show her the issue and unauthorized use which she was reluctant to do, but after being persistent, she

finally agreed to Atanasio's request and took the time to go online while on the phone with Atanasio and she immediately acknowledged the Tattoo Tequila bottle being used in their campaign advertising. Although she advised there was nothing she could do, when Atanasio asked her to escalate the complaint to a senior decision maker, she abruptly ended the call.

23. After conducting further researching on Linked.In, Atanasio called Walmart again seeking to speak with Jason Fremstad, who Atanasio is informed and believes is the Vice President of Adult Beverages for Walmart. Atanasio was advised Mr. Fremstad was unavailable, thus he left a detailed message concerning the issues with the unauthorized use and infringement of his trademark and requested a return call. Unfortunately, Atanasio never received a call back.

24. Finally, Atanasio called Walmart again and this time requested to speak with a Drew Sadler, who Atanasio is informed and believes is the Senior Director Adult Beverage Merchandise Strategy, but was unable to speak with him and failed to receive a return call.

25. Notwithstanding Atanasio's attempts to contact officials at Walmart demanding the use of his Trademark be taken down, Walmart's infringing and unauthorized posts and ads remained on Walmart's Facebook page and Walmart.com website until at least October 30, 2019. As a result, Walmart improperly misappropriated, infringed and profited from Atanasio's Trademark for at least several weeks.

## FIRST CLAIM FOR RELIEF
**(Trademark Infringement (15 U.S.C. §1114(1) As Against All Defendants)**

26. Plaintiff incorporates all prior allegations of this Complaint herein by reference.

27. Plaintiff has extensively and continuously used the Trademark in commerce in connection with a myriad of products, including Plaintiff's advertising and promotion of Tattoo Tequila's line of premium tequila, as well as through endorsement of third-party products.

28. Plaintiff owns the Trademark described above and has received brand and name recognition and approval from the government of Mexico.

29. The registered Trademark is a valid trademark owned by Plaintiff which is still in use. Further, by virtue of Plaintiff's longstanding and continuous use of the Registered Trademark in commerce, Plaintiff has acquired a valid common law trademark of the Tattoo Tequila symbol.

30. Defendants infringed Plaintiff's registered and common law trademarks by using these marks on its social media accounts, including Facebook as well as on its own website at Walmart.com to promote the sale of alcohol and Halloween themed accessories and products.

31. Defendants' unauthorized use of Plaintiff's registered and common law Trademark is likely to confuse and deceive customers as to the origin, sponsorship and/or endorsement of the Tattoo Tequila brand tequilas. Specifically, Defendants' use of Atanasio's Trademark symbol is likely to cause consumers to mistakenly believe that Tattoo Tequila is associated with Walmart, or that Plaintiff sponsors or endorses Defendants' products, websites or social media accounts.

32. As a direct and proximate result of the acts of trademark infringement set forth above, Plaintiff has suffered actual damages in the amount to be proven at trial. Plaintiff is entitled to a full range of relief available under the Lanham Act, 15 U.S.C §1117, including, without limitation, an award of actual damages and the disgorgement of Defendants' profits arising from the acts of trademark infringement. Defendants' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Plaintiff to an award of attorneys' fees and costs.

33. Plaintiff is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue to infringe upon Plaintiffs' Trademark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation

will not afford plaintiff adequate relief for the damage to his Trademark. Accordingly, Plaintiff is entitled to a preliminary injunction and permanent injunction, enjoining Defendants, and their agents, servants, employees and all persons acting under, in concert with, or for them from using Plaintiff's Trademark in connection with Defendants, retail business whether online or otherwise in connect with any goods or services rendered or sold by Defendants

34. Plaintiff is informed and believes, and based thereon alleges, that Defendants committed the infringement described above knowing that its unauthorized use of the Atanasio's Trademark depicting the Tattoo Tequila symbol is likely to cause consumer confusion. Defendants have thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Plaintiff is entitled to an award of treble damages.

## SECOND CLAIM FOR RELIEF

**(Common Law Trademark Infringement - As Against All Defendants)**

35. Plaintiff incorporates all prior allegations of this complaint by this reference.
36. Plaintiffs own valid common law Trademark in Tattoo Tequila for use in connection with a wide variety of products and services, including without limitation the promotion of products and services in entertainment, fashion and products in the spirits industry. The Registered Trademark is likewise valid trademark owned by Plaintiff.
37. The public has come to recognize the Trademark as exclusively identifying Tattoo Tequila.
38. Defendants infringed Plaintiff's registered and common law trademarks by using these marks on its social media accounts, including Facebook as well as on its own website at Walmart.com to promote the sale of alcohol and Halloween themed accessories and products.

39. Defendants' unauthorized use of Plaintiff's registered and common law trademark is likely to confuse and deceive customers as to the origin, sponsorship and/or endorsement of the Tattoo Tequila brand tequilas. Specifically, Defendants' use of Atanasio's Trademark symbol is likely to cause consumers to mistakenly believe that Tattoo Tequila is associated with Walmart, or that Plaintiff sponsors or endorses Defendants' products, websites or social media accounts.

40. As a direct and proximate result of the acts of trademark infringement set forth above, Plaintiff has suffered actual damages in the amount to be proven at trial.

41. Plaintiff is informed and believes, and based thereon alleges, that Defendants committed the infringement described above knowing that its unauthorized use of the Atanasio's Trademark depicting the Tattoo Tequila symbol is likely to cause consumer confusion. Defendants have thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Plaintiff is entitled to an award of treble damages.

42. Plaintiff is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue to infringe upon Plaintiffs' Trademark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford plaintiff adequate relief for the damage to his Trademark. Accordingly, Plaintiff is entitled to a preliminary injunction and permanent injunction, enjoining Defendants, and their agents, servants, employees and all persons acting under, in concert with, or for them from using Plaintiff's Trademark in connection with Defendants, retail business whether online or otherwise in connect with any goods or services rendered or sold by Defendants.

43. Plaintiff is further informed and believes, and based thereon alleges, that Defendants acted with fraud, oppression, or malice in infringing Plaintiff's mark as alleged above. As such, in addition to other relief sought herein, Plaintiff is entitled to an award of punitive damages.

## THIRD CLAIM FOR RELIEF

### (False Endorsement under Lanham Act
### (15 U.S.C. §1125(A)) - As Against All Defendants)

44. Plaintiff incorporates all prior allegations of this complaint by this reference.

45. Plaintiff is the owner of the statutory and common law rights associated with Tattoo Tequila's name, image and likeness necessary for endorsement deals, including the his right to decide whether to associate the Trademark, brand and image with any third-party for purposes relating to sponsorship and/or endorsement.

46. Defendants used distinctive attributes of Tattoo Tequila's image, including the distinctive bottle, image and symbol without permission by Plaintiff, by posting onto Defendants' website, Walmart.com and social media websites, including Facebook during the Halloween season in order to promote the sale of seasonal products, accessories and alcohol through its website or by visiting a nearby Walmart store.

47. Defendants unauthorized uses constitute false or misleading representations of fact to falsely imply the endorsement of Defendants' business and products by Plaintiff and Tattoo Tequila.

48. Defendants' unauthorized use of Plaintiff's registered and common law trademark is likely to confuse and deceive customers as to the origin, sponsorship and/or endorsement of the Tattoo Tequila brand tequilas. Specifically, Defendants' use of Atanasio's Trademark symbol is likely to cause consumers to mistakenly believe that Tattoo Tequila is associated with Walmart, or that Plaintiff sponsors or endorses Defendants' products, websites or social media accounts.

49. As a direct and proximate result of the acts of false endorsement set forth above, Plaintiff has suffered actual damages in the amount to be proven at trial. Plaintiff is entitled to a full range of relief available under the Lanham Act, 15 U.S.C §1117, including, without limitation, an award of actual damages and the disgorgement of Defendants' profits arising from the acts of trademark infringement. Defendants' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Plaintiff to an award of attorneys' fees and costs.

50. Plaintiff is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue to infringe upon Plaintiffs' Trademark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford plaintiff adequate relief for the damage to his Trademark. Accordingly, Plaintiff is entitled to a preliminary injunction and permanent injunction, enjoining Defendants, and their agents, servants, employees and all persons acting under, in concert with, or for them from using Plaintiff's Trademark in connection with Defendants, retail business whether online or otherwise in connect with any goods or services rendered or sold by Defendants.

51. Plaintiff is informed and believes, and based thereon alleges, that Defendants committed the infringement described above knowing that its unauthorized use of the Atanasio's Trademark depicting the Tattoo Tequila symbol is likely to cause consumer confusion. Defendants have thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Plaintiff is entitled to an award of treble damages.

## FOURTH CLAIM FOR RELIEF
**(California Unfair Business Practice - As Against All Defendants)**

52. Plaintiff incorporates all prior allegations of this complaint by this reference.

53. Upon information and belief, Defendants commenced the use of the Trademark with the intent to infringe on Atanasio's Trademark, or at a minimum was willfully blind to Atanasio's Trademark rights.

54. The activities of the foregoing paragraphs, and in each claim for relief asserted in this Complaint, constitute unfair methods of competition in or affecting commerce and/or unfair and deceptive acts or practices in or affecting commerce in California and have proximately caused and are proximately causing injury to Atanasio. Thus these activities violate the California statutory prohibition of unfair and deceptive trade practices under *California Business & Professions Code §§17200, et seq.*

55. By reason of the foregoing, Atanasio is entitled to recover from Defendants, disgorgement of profits and reasonable attorneys' fees and costs.

56. Plaintiff is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue to infringe upon Plaintiffs' Trademark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford plaintiff adequate relief for the damage to his Trademark. Accordingly, Plaintiff is entitled to a preliminary injunction and permanent injunction, enjoining Defendants, and their agents, servants, employees and all persons acting under, in concert with, or for them from using Plaintiff's Trademark in connection with Defendants, retail business whether online or otherwise in connect with any goods or services rendered or sold by Defendants.

57. Plaintiff is informed and believes, and based thereon alleges, that Defendants committed the infringement described above knowing that its unauthorized use of the Atanasio's Trademark depicting the Tattoo Tequila symbol is likely to cause consumer confusion. Defendants have thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Plaintiff is entitled to an award of treble damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. On all claims for relief, for an award of compensatory and treble damages in an amount to be proven at trial;
2. On all claims of relief, for the disgorgement of Walmart's profits attributable to the infringement of Plaintiff's intellectual property rights;
3. For a permanent injunction restraining and enjoining Defendants, it's agents, servants, employees, and attorneys and all those in active concert or participation with Defendant, from using Atanasio's Trademark;
4. For pre-judgment and post judgment interest according to proof at the maximum extent allow by law;
5. For punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from engaging in similar conduct in the future;
6. For Treble damages in an amount according to proof at trial;
7. For disgorgement of profits in an amount according to proof at trial;
8. For attorneys' fees and costs; and
9. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 18, 2020

THE BIONDI LAW FIRM

_____
Glen J. Biondi, Esq.
Attorneys for Plaintiff, John P. Atanasio